IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                              Criminal No. 3:18cr34

TERRAIL LAMONT JENNINGS

**MEMORANDUM OPINION**

This matter is before the Court on the Letter Motion for Compassionate Release filed *pro se* by Terrail Lamont Jennings (ECF No. 70), and the MEMORANDUM OF LAW IN SUPPORT OF MOTION TO WITHDRAW (ECF No. 79). Having considered the Letter Motion (ECF No. 70), the memorandum of counsel (ECF No. 79), the UNITED STATES' RESPONSE TO DEFENDANT'S PRO SE MOTION FOR COMPASSIONATE RELEASE AND DEFENSE COUNSEL'S MOTION TO WITHDRAW (ECF No. 82), the Presentence Report (ECF No. 72), the STATUS REPORT REGARDING COVID-19 VACCINATION (ECF No. 88), and the file, the Letter Motion for Compassionate Release (ECF No. 70) will be denied.

**BACKGROUND**

Over the period of December 11-17, 2017, Jennings committed three robberies and an attempted robbery of small business establishments located in the Richmond, Virginia area. Jennings used a pistol in each robbery. On August 29, 2018, by way of a

Plea Agreement, Jennings entered a plea of guilty to Count One of an Indictment charging him with interference with commerce by robbery in violation of 18 U.S.C. § 1951. The total offense level for guideline purposes was 29 and the Criminal History Category was V in accord with the allocation of criminal history points; but, because Jennings qualified as a career offender the Criminal History Category was VI. And, indeed, even before the robberies, Jennings' criminal history was quite serious, including drug distribution and firearm offenses as well as an assault. The guidelines provided for a confinement term of 151 to 188 months and up to three years of supervised release.

Jennings was sentenced to the minimum term, 151 months, and three years of supervised release. His projected release date is October 6, 2028. He is serving his sentence at Allenwood USP which houses 608 inmates.

The defendant, who suffers from asthma, filed a *pro se* request for compassionate release based upon the general existence of COVID-19, an assertedly plausible release plan, the general apprehension of contracting COVID-19 because he allegedly has a weakened immune system (ECF No. 70). The Court appointed the Federal Public Defender ("FPD") to represent Jennings.[1] The FPD

---

[1] Jennings requested compassionate release from the Warden and the Warden denied the request in a timely fashion and Jennings appealed

filed DEFENDANT'S MOTION TO WITHDRAW AS ATTORNEY AND APPOINT NEW COUNSEL FOR PURPOSES OF COMPASSIONATE RELEASE MOTION (ECF No. 73) because Jennings has filed a petition under 28 U.S.C. § 2255 against the Office of the FPD. That motion to withdraw was granted and counsel from the Criminal Justice Act ("CJA") panel was appointed. CJA counsel reviewed the case and filed, on October 27, 2020, a MOTION TO WITHDRAW (ECF No. 78) along with an Anders brief (ECF No. 79).[2] On February 26, 2021, that Motion to Withdraw was granted so now Jennings is proceeding *pro se*.

### DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

---

it. Nothing in the record indicates what happened with the appeal but the United States does not contest that the exhaustion requirement has been satisfied.

[2] Anders v. California, 386 U.S. 738 (1967).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at

4

[his] prison facility." United States v. White, \_\_\_\_\_ F. Supp.3d \_\_\_\_\_, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020) (quoting United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020)).

1.  **Particularized Susceptibility**

The defendant claims that he has a weakened immune system and suffers from asthma. The medical records do not support either contention. For that reason, Jennings has not met the particularized susceptibility risk facet of the applicable test.

2.  **Particularized Facility Risk**

Nor has Jennings met the particularized facility risk component of the appropriate test. His motion cites press releases and information respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at Allenwood USP, the defendant's facility of incarceration, except to state that "USP Allenwood has three positive tests for COVID-19 among inmates and one among staff. Four inmates have recovered from COVID-19, as has one staff member. There have been no COVID-19 deaths at USP Allenwood." (ECF No. 70, p. 1). Further, the record reflects that, at the time of the filing of the Government's papers, Allenwood USP had 3 active case of COVID-19 among inmates, 3 active cases of COVID-19 among staff, and 128 inmates and 30 staff members who had previously recovered

5

from COVID-19. In addition, all inmates who have tested positive are being appropriately treated and isolated in accord with the appropriate CDC guidelines that have been adopted by the Bureau of Prisons. And, as of March 23, 2021, Jennings had received both doses of the Moderna COVID-19 vaccine.

On this record, Jennings has not met the particularized facility component of the applicable test.

### 3. Other Factors

Jennings has submitted no information on post-offense rehabilitation. Nor has he submitted any argument that his release is somehow warranted under 18 U.S.C. § 3553(a) except to make the points that:

> [h]is childhood was chaotic, with both of his parents struggling with drug addiction, and both being in prison for part of Mr. Jennings' childhood. As such, he lived with both parents as well as a family friend. Family members stated that neither of Mr. Jennings' parents positive[sic] were role models for Mr. Jennings. The same paragraph noted that Jennings' father's drug addiction took precedence over his parental responsibilities. In a lot ways, Mr. Jennings never had a chance, and the fact that his first involvement with the justice system was at 12 years of age seems to confirm that.

(ECF No. 79, p. 12).

As the Government correctly argues, the sentencing factors under 18 U.S.C. § 3553 do not support grant of the request for

6

compassionate release in this case. The offense conduct was exceedingly serious, involved the use of a firearm and threatening employees at business establishments. Further, his criminal history is an exceedingly serious one demonstrating a serious risk of recidivism. Jennings' childhood was chaotic and, indeed, sadly was lacking proper role models, as he says. But, considering those mitigating factors in perspective of the record, as a whole, demonstrates that the entirety of the defendant's sentence should be served if the public is to be protected and if he is to be deterred from further criminal conduct.

## CONCLUSION

For the foregoing reasons, the defendant's *pro se* Letter Motion for Compassionate Release (ECF No. 70) will be denied.

The Clerk is directed to send a copy of this Memorandum Opinion to the defendant.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July __, 2021