IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                               Criminal No. 3:18cr34

TERRAIL LAMONT JENNINGS

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's *pro se* Letter Motion for Compassionate Release (ECF No. 97) (the "*Pro Se* Motion"), the defendant's *pro se* Supplement to Compassionate Release (ECF No. 99) (the "Supplemental *Pro Se* Motion"), the MOTION FOR SENTENCE REDUCTION BASED ON THE FIRST STEP ACT (ECF No. 102) filed by counsel (the "Counsel Motion"), and the UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SENTENCE REDUCTION BASED ON THE FIRST STEP ACT (ECF No. 106). The Court has considered those papers and the Probation Office's Worksheet in Response to Motion for Compassionate Release (ECF No. 103) as well as the Presentence Report (ECF No. 72).

The Court also has considered its previous MEMORANDUM OPINION (ECF No. 91) denying Jennings' Letter Motion for Compassionate release that was filed *pro se* (ECF No. 70). In that Motion, Jennings claimed that he had a weakened immune system and suffered from asthma. The Court held that: (1) the records did not support either contention; and (2) the defendant had not met the

particularized susceptibility risk facet of the applicable test; and (3) Jennings had not met the particularized facility risk (ECF NO. 91, p. 5). In addition, the Court assessed the factors under 18 U.S.C. § 3553(a) and concluded that application of those factors did not warrant compassionate release. Accordingly, Jennings' *pro se* Letter Motion for Compassionate Release (ECF No. 70) was denied. (ECF No. 91).

In the pending *Pro Se* Motion (ECF No. 97), Jennings again bases his request for compassionate release on the assertion that he has a weakened immune system and says that he is entitled to release "in light of the historical extraordinary and compelling circumstances created by coronavirus C.O.V.I.D.19." In the Supplemental *Pro Se* Motion (ECF. No. 99), Jennings asserts, as the basis for compassionate release, that he "is no longer a career offender in light of Green v. United States, 996 F.3d 176 Apr. 29, 2021." He also cites "Lancaster-997 F.3d 171 (4th Cir. 2021)" and a number of district court cases. (ECF No. 99, p. 1-2). Also, he asserts that he has contracted COVID-19 and has been having "really bad headaches and having shortness breath [sic]. (ECF No. 99, p. 2). Finally, Jennings asserts a difficult to discern Eighth Amendment violation as a predicate for release.[1]

---

[1] The Court will not consider the Eight Amendment argument because it is a condition of confinement argument which is to be addressed under 28 U.S.C. § 2255. And, in any event, the argument is so vague and confusing that it is impossible to assess.

2

In the Counsel Motion (ECF No. 102), Jennings presents a panoply of arguments. First, it argues that Jennings has contracted COVID-19 and continues to have COVID-19 related symptoms (including severe headaches and respiratory disease) that are not being adequately addressed by the medical staff at Allenwood USP. (ECF No. 102, p. 4) Second, the Counsel Motion argues that Jennings has been adequately rehabilitated by productively planning for his future and taking a number of courses and programs. (ECF No. 102, and ECF No. 102, Exs. 1 and 2). Third, the Counsel Motion argues that compassionate release is appropriate because "[t]he law is now clear that a Hobbs Act Robbery is not a crime of violence for purposes of the career offender enhancement under USSG § 4B1.1 and 4BBB1.2; U.S. v. Green, 996 F.3d 176 (4th Cir. 2021)." (ECF No. 102, p. 3). In that regard, Jennings notes that the application of the career offender enhancement increased the sentence range from a range of 110 to 137 months to a range of 151 to 188 months.

## BACKGROUND

During the period December 11-17, 2017, Jennings committed three robberies and one attempted robbery of small businesses in the Richmond, Virginia area. Subsequently, Jennings was indicted on one count of Interference with Commerce by Threats of Violence, in violation of 18 U.S.C. § 1951 and one count of Use of a Firearm

3

in Connection with a Crime of Violence, in violation of 18 U.S.C. § 924(c) (ECF No. 1-2 and ECF No. 9).

Later, Jennings pled guilty to a one count Criminal Information (ECF No. 32) charging him with Interference with Commerce by Robbery, in Violation of 18 U.S.C. § 1951. In the Statement of Facts accompanying his guilty plea, Jennings stipulated to having committed additional robberies and so, pursuant to U.S.S.G. § 1B1.2(c) the guidelines were determined as if Jennings had been convicted of additional counts charging those additional robberies (ECF No. 72, ¶19).

The base offense level for the offense of conviction was 20 to which was added an enhancement of five for brandishing a firearm increasing the offense level to 25. And, pursuant to U.S.S.G. § 3D1.4, the offense level was further increased by four to a level of 29 under the combined offense table; and then the level was increased to 32 by application of the Career Offender guideline. That level was reduced by two for demonstrating acceptance of responsibility and by one for timely assistance, leaving a total offense level of 29. Jennings' criminal history score of 12 provided a Criminal History Category of V but, because the defendant was a career offender, the Criminal History Category was adjusted to VI. The total guideline range for incarceration therefore was 151 to 188 months and Jennings was sentenced to the low end of the guidelines, 151 months of imprisonment. He is

4

currently serving that sentence at Allenwood USP and has a projected release date of October 6, 2028.

Under the decision in United States v. Green, 996 F.3d 176 (4th Cir. 2021), the offense of conviction would no longer qualify Jennings for treatment as a career offender because Hobbs Act Robbery is not categorically qualified as a crime of violence under U.S.S.G. § 4B1.1. If sentenced today, Jennings would have an adjusted offense level of 29 reduced by three (for acceptance of responsibility and timely assistance) for a total offense level of 26 with a Criminal History Category of V and an imprisonment guideline range of 110 to 137 months. The offense of conviction, then and now, carries a statutory maximum sentence of twenty years of imprisonment.

The United States opposes the compassionate release for four reasons. They are that: (1) Jennings' vague medical/COVID-19 claim does not warrant relief; (2) Jennings' reliance on Green is a misplaced collateral attack on defendant's sentence and that § 3582(c)(1)(A) does not take priority over 28 U.S.C. § 2255, which is the vehicle for making a collateral attack on the validity of the sentence; (3) the erroneous career offender classification is not an extraordinary and compelling reason for sentence reduction; and (4) the § 3553(a) factors do not allow for Jennings' release.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that 'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3d 784, 785 (W.D. Mo. 2019).

### A. The COVID-19 Argument

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). The policy statements are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The cases

6

teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020); United States v. White, ____ F. Supp.3d ____, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020)

1. **Particularized Susceptibility**

Jennings asserts in essence that, notwithstanding having received both Moderna vaccines, he suffers from lingering headaches and that he has trouble breathing after he contracted, and recovered from, COVID-19. The Counsel Motion describes these conditions as "long COVID." He also asserts that he suffers from asthma. However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement because the identified risk factor conditions must be serious to constitute extraordinary and compelling reasons. It appears from the record that the

7

conditions on which Jennings bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

Jennings has not established that "long COVID" presents a risk factor for a COVID-19 reinfection or for serious illness or death if he experiences another bout of COVID-19. Nor has Jennings established that he is not being appropriately treated for his self-diagnosis of "long COVID." And, the medical records do not support a finding that Jennings suffers from asthma, much less asthma of the severity recognized by the CDC as necessary for the risks associated with COVID-19.

In sum, Jennings has not met the particularized susceptibility risk facet of the applicable test.

### 2. Particularized Facility Risk

Nor has Jennings met the particularized facility risk component of the appropriate test. His motions cite press releases and information respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at Allenwood USP, Jennings' facility of incarceration. The record reflects that, at the time of the filing of the Government's papers, Allenwood USP had no active case of COVID-19

8

among inmates and one active case of COVID-19 among staff. Considering the record evidence respecting conditions at Allenwood USP and the fact of Jennings' vaccination, Jennings has not met the particularized facility component of the applicable test.

### B. Assessment Under 18 U.S.C. § 3553(a) and Rehabilitation

But, even if Jennings had met the particularized risk assessment and the particularized facility assessment (which he has not), the sentencing factors prescribed by 18 U.S.C. § 3553(a) do not augur in favor of compassionate release.

Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. Neither the *Pro Se* Motion nor the Supplemental *Pro Se* Motion nor the Counsel Motion address the issue of danger. However, the offense of conviction and the related robberies and Jennings' criminal history illustrate his propensity for engaging in drug trafficking, a business that presents a danger to the community, and for participating in armed robberies which, indeed, pose great danger. Furthermore, the offense of conviction occurred only two months after Jennings had been released from state post-trial supervised probation. That is persuasive evidence that incarceration does not deter Jennings from endangering the public. On this record, the Court cannot conclude that Jennings does not present a danger to society.

9

That conclusion is not affected by the significant record of rehabilitative courses taken by Jennings while in prison (ECF No. 102-2). Without doubt, the taking of those courses is evidence of rehabilitation; and Jennings is to be commended for pursuing that kind of education and self-development while in prison. However, that conduct, commendable though it may be, simply does not offset the seriousness of the offense conduct here, particularly when viewed in perspective of the nature and extent of Jennings' criminal history.

The § 3553 factors that must take precedence in this case are the seriousness of the offense, the need to protect the public, and the need to deter the defendant and others. They counsel denial of release.

C. **United States v. Green**

That brings the analysis to the contention (raised in the Supplemental *Pro Se* Motion and the Counsel Motion) that Jennings' sentence should be reduced because of the decision in United States v. Green, 996 F.3d 176 (4th Cir. 2021), holding that Hobbs Act Robbery is not a crime of violence for purposes of the career offender enhancement under U.S.S.G. §§ 4B1.1 and 4B1.2. The removal of that enhancement would decrease Jennings' sentencing guideline range from a range of 151 to 188 months to 110 to 137 months.

To begin, the United States argues that the Green argument is a misplaced collateral attack on his sentence which must be brought under 28 U.S.C. § 2255, a statute that takes priority over the sentence reduction provisions in § 3582(c)(1)(A). Citing a number of cases dealing with the proper vehicle for raising a challenge to the validity of a criminal judgment, the United States argues that Jennings' motion is somehow a collateral attack on Jennings' conviction. Were that case, the position of the United States would be correct and the authority cited by the United States would be persuasive. However, Jennings' motion is not an attack on the validity of the conviction. It is plain and simple - a request to reduce the sentence - which, if imposed today, would be subject to a guideline that is considerably lower than the range which controlled at Jennings' sentencing.

Next, the United States argues that the Green argument made by Jennings (a significant change in sentencing law) fails to meet the burden required to establish release under § 3582(c)(1)(A) ("an exceptionally high standard"). United States v. McCoy, 981 F.3d 271, 288 (4th Cir. 2020). Contrary to the Government's contention, the United States Court of Appeals for the Fourth Circuit has determined that a change of that kind and magnitude can be considered as an extraordinary and compelling reason for release. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

However, the extreme length of the sentence and the difference in what the sentence would be if imposed following a change in the statute in the McCoy case represented a judgment made by Congress to change the quantum of punishment. Green involves no such change. Instead, Green involves an interpretation of the law by courts, and there are rules that apply to the change in the affected law by court decisions. One of those rules is whether the decision has been made retroactive. The answer, as both sides agree, is that Green has not been made retroactive.

Nonetheless, district courts are instructed to consider the case and the defendant on the day of sentencing whether at original imposition or at modification (if modification is permitted by law). Concepcion v. United States, 142 S. Ct. 2389 (2022). And, that requires district courts, when modifying a sentence, to consider changes in law as well as rehabilitation. Id. at 2402-04. Concepcion, of course, was decided, not under § 603 of the First Step Act, but under § 404. There is, however, no logical reason that Concepcion's fundamental underpinnings should not be applied in deciding § 603 motions.

Further, the United States argues that guideline error does not meet the high standard of extraordinary and compelling reasons for relief required by § 3582(c)(1)(A). And, the United States cites several Courts of Appeals which have rejected the argument that a defendant's erroneous classification of career offender

12

constitutes an extraordinary and compelling reason for compassionate release (ECF No. 106, pp. 12-13, citing cases from the Third, Sixth, Seventh and Eighth Circuits, and a decision from this Court (United States v. Stokes, No. 3:05cr138-REP (E.D. Va. Feb. 4, 2022, ECF No. 108).

Relatedly, the United States also argues that in United States v. Foote, 784 F.3d 931, 932 (4th Cir. 2015), a claim that the defendant was erroneously sentenced as a career offender is not cognizable on collateral review because it is not an exceptional circumstance (ECF No. 106, p. 15). That, says the United States, is "because Green relied on a narrow distinction between the definition of Hobbs Act robbery and the definition of a crime of violence under the career offender guideline."

Those arguments, however, do not permit the Court to ignore the fact that, in McCoy, our Court of Appeals authorized courts to consider the difference in penalties (even where they do not result from Congressional judgment but from judicial decision). That, of course, does not mean that the motion for release is to be granted where such differences in sentencing do appear in the record. Rather, it simply means that the Court is obligated to consider those factors, among all the others that are to be considered in deciding motions for compassionate release.

13

McCoy instructs that a change in sentencing law that produces a great disparity between the defendant's sentence as imposed and the sentence that would be imposed after the change in sentencing law. Here, the difference in ranges is not as great as it was in McCoy. Here, the difference in range is 41-51 months (110-137 months versus 151-188 months).

Another of the factors that can be considered is that the statutory maximum imprisonment term for the offense of conviction is twenty years in prison. This is 240 months. The sentence of 151 months is considerably below the statutory maximum sentence. And, that factor is important here because of the sheer number of robberies committed by Jennings, the brandishing of a firearm, and the fact that, on September 7, 2017, Jennings was released from supervised probation by the Commonwealth of Virginia (drug trafficking and firearm convictions) and the offense conduct in this case began three months later on December 11, 2017. (PSR, p. 13, ¶ 61 (ECF No. 72)). Taking all of that into account, the sentencing disparity component that was present in McCoy is not present in this case.

It also is appropriate to consider the length of the time that a defendant has served in his sentence. In this case, the sentence was imposed on January 14, 2019, only four and a half years ago.

Taking all factors into account, including the seriousness of the offense, the actual dangerous nature of the offense conduct, the number of robberies in which the defendant engaged, the defendant's criminal history, the fact that he seems not to have learned from previously extended leniency, and that he seems to be undeterred by incarceration as evidenced by the committing of crimes shortly after his release from supervised probation, and perceiving the defendant's inclination towards violent conduct and the need to protect the public and promote respect for the law, and to deter the defendant, the Court cannot conclude that Jennings has carried the burden of establishing entitlement to compassionate release, notwithstanding that the record of rehabilitation that he has presented, and the decision in <u>Green</u>. In that regard, considering all of the record in the case, a reduction of sentence in this case would have to be to the high end of the current guidelines (137 months) which would be a reduction of the current sentence by fourteen months. In either event, the sentence would be approximately half of the statutory maximum and the Court is of the view that the sentence originally imposed is sufficient, but not greater than necessary, to accomplish the objectives of the sentencing statute, 18 U.S.C. § 3553(a).

## CONCLUSION

For the reasons set forth above, the defendant's *pro se* Letter Motion for Compassionate Release (ECF No. 97), the defendant's *pro se* Supplement to Compassionate Release (ECF No. 99) and the MOTION FOR SENTENCE REDUCTION BASED ON THE FIRST STEP ACT (ECF No. 102) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August 7, 2023